IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


**NICHOLAS A. SRADER,**

                **Plaintiff,**

     v.                                                    CASE NO. 10-3209-SAC

**SHELDON RICHARDSON, et al.,**

                **Defendants.**


**MEMORANDUM AND ORDER**


     This matter is a civil rights action filed by a prisoner in federal custody. Plaintiff commenced this action while incarcerated in the Leavenworth, Kansas, detention center operated by the Corrections Corporation of America (CCA).

     By its earlier orders, the court dismissed the Corrections Corporation of America, the United States Marshals Service, Shelley (LNU), and the United States Attorney for the District of Kansas.

     The complaint states that plaintiff entered the CCA facility in June 2009 while in the custody of the United States Marshals Service. In mid-September 2009, he was placed in administrative segregation after allegedly threatening a federal witness. During that segregation, he alleges he was subjected to restrictions on mail, telephone use, visitation, and contact with other inmates. He claims that during this time, his mail was intercepted and given to defendant Morehead, an Assistant United States Attorney.

     In March 2010, plaintiff's access to mail was restored. He was assigned a cellmate, who he claims was affiliated with the Aryan Brotherhood.

In April 2010, after a confidential informant notified facility personnel that plaintiff's cellmate planned to attack a staff member, a team conducted a search of their cell and located a large screw inside a mattress. Both inmates were placed on strip cell status. Plaintiff alleges that his cellmate carved gang signs into a window, and eventually set a fire in the cell. Responding staff used a gas grenade in the cell. Plaintiff did not receive medical treatment after this event, and was returned to the cell. He claims he suffered from panic and anxiety, and he reported suicidal ideation in order to be removed from the cell and placed in observation.

On April 23, 2010, plaintiff received disciplinary reports for the incident. A hearing was conducted on May 10, 2010. Plaintiff complains that he did not receive due process during the administrative proceedings, that CCA took funds from his account, that his property was stolen while he was in segregation, and that staff lost the property claim he submitted.

In May 2010, plaintiff was transferred to another facility for a psychological evaluation. Upon his return to the CCA facility in July 2010, he again was subjected to the restrictions. Plaintiff unsuccessfully sought to have money from his disciplinary fine refunded based upon his cellmate's acceptance of responsibility for the fire. He was advised to resubmit the property claim, but that claim later was denied as untimely.

Plaintiff alleges violations of his rights to freedom of speech and expression and freedom of association; he alleges his mail was illegally seized, that his indefinite placement in administrative segregation violated due process, and that the restrictions on telephone access, visitation, and mail subjected him to cruel and

unusual punishment.

**Screening**

The federal courts must conduct a preliminary screening of a case in which a prisoner seeks redress from a governmental entity or an officer or employee of such an entity. See 28 U.S.C. § 1915A(a). At this stage, the court is to identify any cognizable claim and to dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b), 28 U.S.C. § 1915(e)(2)(B).

To state a claim for relief, a plaintiff's complaint must present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Having carefully considered the complaint and the exhibits provided by the plaintiff, the court finds that plaintiff's claims against individual CCA employees are subject to dismissal and rejects his claims concerning his placement segregation, disciplinary action, property loss, and cruel and unusual treatment.

**CCA defendants**

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the United States Supreme Court "recognized for the first time an implied private action for damages

against federal officers alleged to have violated a citizen's constitutional rights." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)(internal quotation marks omitted).

That remedy, however, has not been extended to private entities acting under color of federal law. Two decisions limiting the applicability of the *Bivens* remedy are relevant in the context of the present action. First, in *Correctional Services Corp. v. Malesko*, 534 U.S. 51 (2001), the Court expressly declined to extend the damages remedy to an action against a corporate entity operating a private prison. More recently, in *Minneci v. Pollard*,___ U.S. ___, 132 S.Ct. 617 (2012), the Court found no private damages action against employees of a privately-operated federal prison, holding that state tort law remedies provide an adequate alternative so long as they "provide roughly similar incentives for potential defendants to comply with" constitutional rights "while also providing roughly similar compensation to victims of violations." *Minneci*, __ U.S. ___, ___, 132 S.Ct. 617, 625 (2012). Because the plaintiff has adequate remedies under Kansas tort law, the court finds plaintiff's claims concerning property loss are subject to dismissal from this action. *See McCormick v. City of Lawrence*, 253 F.Supp.2d 1172, 1199 (D.Kan 2003), *aff'd*, 99 Fed.Appx. 169 (10th Cir. 2004)(noting plaintiff's claims concerning negligent deprivation of property could be addressed under the Kansas Tort Claims Act or an action for conversion).

Moreover, for the reasons that follow, the court finds that plaintiff's claims arising from the conditions of his confinement, with one exception, are subject to summary dismissal on their merits.

**Placement in segregation**

Generally, an inmate's placement in administrative segregation does not violate a protected interest, because a prisoner is not entitled to a particular degree of liberty while incarcerated. *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006). However, where an inmate is segregated under conditions that create an "atypical and significant hardship" in relation to the ordinary incidents of prison life, a liberty interest may be implicated. *Estate of DiMarco v. WY Dept. of Corr.*, 473 F.3d 1334, 1339 (10th Cir. 2007)(citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

A court considering a challenge to a prisoner's segregation should consider whether the segregation furthers a legitimate penological interest, whether the physical conditions are extreme, whether the placement increases the period of confinement, and whether the placement is indeterminate. *DiMarco*, 472 F.3d at 1342.

Here, it is incontrovertible that plaintiff made threatening statements concerning a witness.[1] Plaintiff's threatening conduct suggests a valid penological interest in maintaining his custody in a close environment. Next, the physical conditions of the segregated confinement are not alleged to be unusually harsh. The placement did not increase the plaintiff's period of confinement, as plaintiff was in pretrial detention at the time of the segregation. Finally, while it appears that the segregated placement was of several months' duration, it was broken during his transfer from the facility for evaluation, and was not clearly outside the ordinary incidents of

---

[1] The court takes judicial notice of recent action in plaintiff's challenge to his conviction under 28 U.S.C. § 2255. Addressing plaintiff's motion, the sentencing court wrote: "Defendant wrote multiple threatening letters to a witness or to a third party about the witness. The letter to a third party was recounted at length in the presentence investigation report. It contained a number of threatening statements about the witness and her family." *U.S. v. Srader*, 2013 WL 3991781 (D. Kan. 2013).

prison life. Based on these factors, the court finds no claim is stated concerning the placement in administrative segregation.

**Administrative disciplinary action**

Under *Sandin*, a prison disciplinary proceeding does not implicate a constitutionally protected interest unless it results in punishment that subjects the prisoner to an atypical and significant deprivation. *Sandin*, 515 U.S. at 486. Moreover, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

Rather, due process requires that an administrative disciplinary ruling be sustained where there is "some evidence" to support it, and a prisoner is entitled only to advance written notice of the charges, an opportunity to present witnesses and documentary evidence where consistent with institutional safety, and a written statement of the decision from the factfinder. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985). Accordingly, the court reviews a disciplinary action only to determine whether the procedural requirements were followed and whether there is some evidence to support the determination. *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996).

The materials submitted by the plaintiff include copies of two disciplinary reports prepared on April 23, 2010. The first report shows that a staff member observed damage to plaintiff's cell door window, including a racial epithet scratched onto it. (Doc. 1, Ex., p. 32.) The second disciplinary report states that the reporting officer discovered that in addition to refusing to clean the cell window and submit to restraints, plaintiff and his cellmate started a fire using items from plaintiff's meal. The response to this required

the involvement of 43 staff members to evacuate the unit. The report also notes that a mattress was destroyed during the incident. (Doc. 1, Ex., p. 30.)

Hearings on these reports were held on May 10, 2010. The summary reports of these hearings state that the ruling was based upon a review of the evidence, the disciplinary report, and investigation. Plaintiff refused to attend the hearings despite being asked three times if he would leave his cell to attend. (*Id.*, pp. 31 and 33.)

The court finds plaintiff was afforded adequate due process during the administrative proceedings, and that the findings of guilt are supported by the testimony of the reporting officers, which satisfies the quantum of "some evidence". Plaintiff does not state a claim for relief.

**Eighth Amendment**

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provided humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). To state a claim for relief under the Eighth Amendment, a prisoner must allege conditions that are "sufficiently serious so as to deprive inmates of the minimal civilized measure of life's necessities" or that "constitute a substantial risk of serious harm." *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001)(internal quotation marks omitted).

In addition to this objective component, a prisoner must allege that the defendants acted with "a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety." *Id*.

Here, the conditions of plaintiff's confinement do not suggest he has been denied any measure of life's necessities by the restrictions imposed. *See Kennedy v. Blankenship*, 100 F.3d 640, 642 n.2, 642-43 (8th Cir. 1996)(prisoner's placement in punitive isolation was not an atypical and significant deprivation despite fact that plaintiff had restrictions on mail, visitation, telephone, and other privileges). The court finds plaintiff's allegations fail to state a claim under the Eighth Amendment.

**Property loss**

A prisoner's allegations that prison officials randomly deprived the prisoner of personal property, whether by an intentional act or by negligence, do not state a constitutional claim "if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Plaintiff had a tort remedy under Kansas state law to recover his lost property, and accordingly, he cannot state a constitutional claim arising from the loss.

**First Amendment claims**

The balance of plaintiff's claims implicate the First Amendment, as he alleges the seizure of all of his outgoing correspondence, the rejection of all incoming correspondence, a complete ban on visitation, and a ban on contact with other inmates.

"Correspondence between a prisoner and an outsider implicates the guarantee of freedom of speech under the First Amendment and a qualified liberty interest under the Fourteenth Amendment." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). "A prisoner has a constitutional right to have his outgoing mail processed for delivery, absent legitimate penological interest to the contrary." *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010)(citing *Treff*, 74 F.3d

at 195)). Likewise, "[a]lthough prison officials may regulate the content of incoming mail and properly ban items such as stickers [citations omitted] there is no legitimate penological reason to restrict mail simply to harass inmates or to confiscate mail that complies with prison policy." *Gee, id*.

Plaintiff's allegation that the marshal imposed blanket restrictions on his mail and that defendant Morehead held his outgoing mail in her possession is sufficient to require a response.

Plaintiff also complains of a complete ban on visitation and telephone use. "[T]he Supreme Court has held that inmates have no right to unfettered visitation. Rather, prison officials necessarily enjoy broad discretion in controlling visitor access to a prisoner." *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998)(citing *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)(restrictive visitation procedures are within the broad discretion of prison officials); *Wirsching v. Col.*, 360 F.3d 1191, 1198 (10th Cir. 2004)("the Constitution allows prison officials to impose reasonable restrictions upon visitation.") *Compare Johnson v. Miller,* 2009 WL 2591681 (W.D.Okla. 2009)(noting that "Plaintiff has also not alleged that LCF imposed a complete ban on all of Plaintiff's visitors").

Similarly, it is recognized that "a prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution." *Burnett v. Jones*, 437 Fed.Appx. 736, 745 (10th Cir. 2011)(internal quotation marks omitted).

In order to ensure the proper evaluation of plaintiff's claims alleging interference with all of his incoming and outgoing correspondence and complete bans on visitation and telephone use, the

court will direct a response from the remaining defendants on those limited issues.

## Conclusion

For the reasons set forth, the court dismisses all employees of CCA and all claims except those arising under the First Amendment. The evaluation of those claims requires a responsive pleading from the remaining defendants.

IT IS, THEREFORE, BY THE COURT ORDERED defendants Richardson, Roberts, Daughtery, Sullivan, Valdez, Miller, Schilling, Moore, Martin, and Myers are dismissed from this action.

IT IS FURTHER ORDERED plaintiff's claims concerning segregation, discipline, property loss, and Eighth Amendment violations are denied.

IT IS FURTHER ORDERED the clerk of the court shall issue service of process to defendant Jarred (LNU) and defendant Terra D. Morehead.

Copies of this order shall be transmitted to plaintiff and to the remaining defendants.

**IT IS SO ORDERED.**

DATED: This 31st day of March, 2014, at Topeka, Kansas.

S/ Sam A. Crow
SAM A. CROW
U.S. Senior District Judge